IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIJAH HAYES-OLIVERA** | : | |
| 467 Eshelman St. | : | |
| Highspire, PA 17034, | : | |
| *Plaintiff* | : | |
| | : | |
| | : | |
| vs. | : | |
| | : | |
| | : | Docket Number : |
| **NORTHWESTERN LEHIGH** | : | 23 – CV – 4982 |
| **SCHOOL DISTRICT** | : | |
| 6493 Route 309 | : | |
| New Tripoli, PA 18066, | : | |
| *Defendant* | : | JURY TRIAL DEMANDED |

# COMPLAINT

Filed on December 17, 2023 by:

**BELLWOAR KELLY, LLP**
126 W. Miner Street                          Ryan R. Grace
West Chester, PA 19382                   PA Attorney ID: 307192
(610)314-7066                                    *rgrace@bellwoarkelly.com*

AND NOW Elijah Hayes-Olivera, by and through undersigned counsel, files this Complaint alleging that his rights, pursuant to Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e, et seq., and the Pennsylvania Human Relations Act, 43 P.S. § 955(a), et seq., have been violated and avers as follows:

## THE PARTIES

1. Plaintiff Elijah Hayes-Olivera ("Plaintiff") is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 467 Eshelman St. Highspire, PA 17034.

2. Plaintiff is an African-American man.

3. Defendant, Northwestern Lehigh School District ("Defendant") at all relevant times hereto, operated public schools within the Commonwealth of Pennsylvania, including Northwestern Lehigh High School, with an office address of 6493 Route 309 New Tripoli, PA 18066.

4. At all relevant times hereto, Defendant had extensive, continuous, regular and systematic business contacts in the Eastern District of Pennsylvania.

## JURISDICTION

5. Jurisdiction over this controversy is properly vested in the United States District Court pursuant to 28 U.S.C. §1331, as it is a civil action arising under the Constitution and laws of the United States of America.

6. Supplemental jurisdiction over Plaintiff's state law claims is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1367.

## VENUE

7. This matter is properly addressed in the venue of the United States District Court for the Eastern District of Pennsylvania, because a substantial part of the events, acts and omissions by Defendants giving rise to Plaintiff's claim occurred in the jurisdiction of this Court, more specifically, in New Tripoli, Lehigh County, Pennsylvania.

## FACTS AT ISSUE

8. Plaintiff was hired by Defendant to work as a long-term substitute teacher of biology for the 2021-2022 school year.

9. Though it was Plaintiff's first year as Defendant's employee, Plaintiff was a student-teacher during the 2020-2021 school year at Central High School in Philadelphia.

10. Plaintiff was the only African-American employed as a teacher by Defendant during the entire time Plaintiff was employed by Defendant.

11. To the best of Plaintiff's knowledge and understanding, he was the first ever African American employed as a teacher by Defendant.

12. Throughout his time working for Defendant, Plaintiff was regularly and systemically subjected to disparate and inferior treatment than Caucasian employees.

13. Other employees of Defendant constantly ignored and ostracized the Plaintiff.

14. As part of the ostracism, other employees of Defendant routinely conveyed messages intended for Plaintiff regarding school issues through Plaintiff's direct supervisor rather than ever speaking or emailing directly with Plaintiff.

15. Defendant's agents regularly left Plaintiff off of group emails that were pertinent and necessary to Plaintiff.

16. Plaintiff was held to a higher standard than Caucasian employees, specifically he was routinely reprimanded regarding the timing of grade submissions while Caucasian employees were always permitted to turn in grades late.

17. Agents of the Defendant excessively micro managed, and even changed, grades submitted by Plaintiff.

18. One of Defendant's vice-principals at the school where Plaintiff worked even told Plaintiff that no one else was subjected to the excessive micro management of testing and grading.

19. Apart from the discriminatory criticism of his testing and grading, Plaintiff received no write ups or formal complaints about his job performance.

20. Defendant permitted students to treat Plaintiff like a second class citizen, specifically agents of Defendant allowed students to openly, loudly, and blatantly disrespect the Plaintiff by yelling at him and leaving his class without permission.

21. During the 2021-2022 school year, Plaintiff applied for a permanent teaching position, hoping his treatment would improve when he was no longer a substitute teacher.

22. Plaintiff received positive student reviews and was abundantly qualified for the permanent position.

23. While awaiting a decision regarding the permanent position, a non-Caucasian student indicated to the Plaintiff that she had concerns about him being chosen for the permanent position because "the district is racist."

24. The Plaintiff immediately discontinued the conversation with the non-Caucasian student.

25. Upon learning of the non-Caucasian student's allegation that the district is racist, agents of Defendant shockingly reprimanded Plaintiff on the basis that he should have proactively argued with the student that the allegation of racism is unfounded.

26. Despite a clear qualifications and positive work product, Plaintiff was denied the permanent teaching position.

27. Defendant selected a Caucasian candidate to fill the role for which Plaintiff had applied.

28. Plaintiff made specific complaints, to agents of Defendant, regarding the disparate treatment he suffered and his belief that the unfair treatment was caused by racial animus.

29. Subsequent to the Plaintiff's complaints regarding racially toxic work environment, agents of the Defendant increased its ostracism of the Plaintiff.

30. Subsequent to the Plaintiff's complaints regarding racially toxic work environment, agents of the Defendant increasingly permitted students to openly direct overt and aggressive "hatred" toward Plaintiff.

31. Plaintiff suffered extended economic loss after his termination due to negative effects on his professional reputation.

32. Plaintiff suffered extended mental stress and emotional distress from the humiliation and dehumanizing effects of the racial discrimination; Plaintiff experienced mental anguish from a sense of being vulnerable to racial discrimination in the workplace as well as mental anguish resulting from having to work in an environment where management tolerated racial discrimination and expressions of racial hatred to be directed at his members of Plaintiff's race.

33. As a victim of open racial discrimination in his workplace, Plaintiff suffered a diminution of enjoyment of life.

34. Plaintiff filed a formal charge with the U.S. Equal Employment Opportunity Commission under number 530-2022-06309 and received a Right to Sue Letter on September 18, 2023.

35. Plaintiff has exhausted the administrative remedies available to him, and all necessary and appropriate administrative prerequisites to the filing of this Complaint have occurred and been satisfied.

## COUNT I
## VIOLATION of TITLE VII, CIVIL RIGHTS ACT
### *Plaintiff v. Defendant*

36. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

37. Defendant created an unlawful racially abusive workplace environment, in violation of 42 U.S.C.A. § 2000e.

38. Specifically Defendant discriminated against Plaintiff with respect to conditions of employment because of Plaintiff's race, in violation of 42 U.S.C.A. § 2000e-2(a).

39. The constant disparate treatment of African-American employees as well as retaliation against Plaintiff when he objected to the racially disparate treatment amount to "sufficiently severe or pervasive to alter the conditions of

Plaintiff's employment," *see* Pennsylvania State Police v. Suders, 542 U.S. 129 (2004).

40. Defendant created a hostile workplace environment under Title VII of the Civil Rights Act because all of the following conditions are met:

    a. "Plaintiff suffered intentional discrimination because of his race;

    b. the discrimination was pervasive and regular;

    c. the discrimination detrimentally affected Plaintiff;

    d. the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and

    e. there is a basis for respondeat superior liability," *see* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d. Cir. 1997).

41. Defendant unlawfully terminated Plaintiff in retaliation for objecting to unlawful employment practices in violation of 42 U.S.C.A. § 2000e-3(a).

42. By fostering blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace, Defendant engaged in discriminatory practices intentionally, with malice, and with reckless indifference to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant, in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and

reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT II
## VIOLATION of PENNSYLVANIA HUMAN RELATIONS ACT
### *Plaintiff v. Defendant*

43. Plaintiff hereby incorporates by reference the paragraphs set forth above as if fully set forth herein at length.

44. Based on the foregoing, Plaintiff alleges that Defendant violated the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

45. Plaintiff alleges that Defendant further violated the Pennsylvania Human Relations Act by retaliating against Plaintiff for his making complaints of racial discrimination in the form of denying him permanent employment with Defendant.

46. Defendant caused Plaintiff to sustain significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages, sustained work loss, and permanent diminution of his earning power and capacity, and a claim is made therefore.

47. Plaintiff demands attorney's fees and court costs.

WHEREFORE, Plaintiff respectfully requests your Honorable Court to enter judgment in favor of Plaintiff and against Defendant, in excess of $150,000, jointly and severally, for compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

Respectfully submitted,

Ryan R. Grace
*Attorney for the Plaintiff*